NOTICE

Decision filed 07/22/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 241099-U

NO. 5-24-1099

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 19-CF-957 |
| | ) | |
| HERBERT C. SHAH, | ) | Honorable |
| | ) | Randall B. Rosenbaum, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Boie and Hackett concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's denial of the defendant's postconviction petition after an evidentiary hearing was not against the manifest weight of the evidence, but the cause is reversed and remanded where postconviction counsel failed to comply with Illinois Supreme Court Rule 651(c).

¶ 2    Following a third-stage evidentiary hearing, the trial court denied the defendant's postconviction petition. On appeal, the defendant argues that the court erred when it denied his petition. He argues in the alternative that postconviction counsel failed to comply with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). For the following reasons, we reverse and remand.

¶ 3                                I. BACKGROUND

¶ 4    On July 1, 2019, the defendant, Herbert Shah, was charged by information with one count of aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2018)) (count I), one count

1

of possession of a stolen firearm (*id.* § 24-3.8(a)) (count II), and two counts of unlawful possession of a weapon by a felon while on mandatory supervised release (*id.* § 24-1.1(a)) (counts III and IV). The charges stemmed from an incident involving Robert Grady on June 22, 2019. On August 31, 2020, on the State's motion, the trial court dismissed count II.

¶ 5 Prior to the defendant's first jury trial, the State extended two plea offers. The first offer was that the defendant would plead guilty to count I in exchange for a 15-year sentence and dismissal of the other three counts. The second offer was that the defendant would plead guilty to count I in exchange for a sentencing cap of 17 years and dismissal of the other three counts. The defendant rejected both offers. On September 1, 2020, the first jury trial commenced. The trial resulted in a jury finding of not guilty on count IV. The jury deadlocked as to counts I and III, and the court declared a mistrial on those counts.

¶ 6 On November 4, 2020, shortly before the defendant's second jury trial on counts I and III commenced, the trial court asked the State if the court should be made aware of any plea negotiations that had occurred after the first trial but prior to the second trial. The State informed the court that the defense made a counteroffer of four years' incarceration, which the State rejected. The court then asked the defendant, "Sir, is that your understanding of what the negotiations have been since the last trial?" The defendant conferred with counsel. In the report of proceedings, the defendant's answer to the court's query was noted as "unintelligible." However, the court replied to the defendant's "unintelligible" answer with "Yes? Okay, thank you." The trial court then advised the defendant that it was his decision alone whether to plead guilty or to proceed to trial. When asked by the court if the decision to "go to trial today" was his, the defendant replied, "Yes." When questioned if anyone had "forced, threatened, or pressured" him to make that decision, the defendant replied, "No, sir."

¶ 7     The jury was then brought in and the trial commenced. The evidence adduced at trial has been previously set forth in the defendant's prior appeal, *People v. Shah*, 2022 IL App (4th) 210244-U. We only reiterate the evidence relevant to the issues on appeal for clarity. The evidence revealed that two men were arguing in front of a liquor store. The verbal argument escalated first into a fistfight and later into a shooting. Tenille Perring and Jose Perez testified that a man in a white or light-colored shirt with a boot on his ankle fired the gun. The defendant's girlfriend, Tiara Ivy, identified the man in the white shirt with a boot on his ankle as the defendant. The initial argument was caught on cell phone video. No witness identified the defendant as the shooter in a police lineup. The weapon involved in the shooting was located after police followed the flight path of the suspect given by an anonymous witness. The victim of the shooting, Robert Grady, was not a cooperative witness. The jury ultimately found the defendant guilty of both counts.

¶ 8     On December 29, 2020, a letter from the defendant was filed. In the letter, the defendant alleged that trial counsel was ineffective and asked the court to hold a *Krankel* inquiry. The defendant stated that his biggest issue was the suppression of Grady's declaration of facts that was exculpatory for the defendant. An affidavit signed by Grady was attached to the letter. Grady's affidavit stated that the defendant was not the shooter in question. It further stated that Grady and the defendant were engaged in a physical altercation when the shots were fired and then they both fled away from the shooting. In response to the letter's allegations, the trial court conducted a *Krankel* inquiry on December 30, 2020.

¶ 9     During the *Krankel* inquiry, the defendant discussed several allegations of ineffective assistance of counsel. His arguments included that trial counsel failed to admit exculpatory evidence through Grady's declaration of facts although the evidence was provided to counsel through discovery. The defendant further contended trial counsel informed him that Grady's

3

declaration was inadmissible but could never explain why it was inadmissible or what rule prevented its admissibility. He additionally asserted that trial counsel failed to interview and subpoena witnesses who could have contradicted the State's evidence. The defendant noted that counsel failed to contact and subpoena the persons who observed the assailant. The defendant further argued that counsel failed to impeach the witness, Jose Perez, with inconsistent statements.

¶ 10    During the hearing, the defendant further contended that counsel was ineffective for trying to negotiate a plea deal without his consent or knowledge. The defendant stated trial counsel sent a plea deal in which the defendant would serve 10 years' imprisonment but he and counsel "never talked about any plea deals." He continued, "I wasn't pleading to anything, so I don't understand how a plea deal was even negotiated or even talked about because I didn't ask or even look into a plea deal." After the defendant presented his remaining claims and the court questioned trial counsel, the court denied the defendant's request for the appointment of new counsel to pursue an ineffective assistance claim.

¶ 11    Thereafter, the trial court sentenced the defendant to a 22-year term of incarceration for aggravated discharge of a firearm and a concurrent 10-year term for unlawful possession of a weapon by a felon. The defendant appealed, and the appellate court affirmed. *Shah*, 2022 IL App (4th) 210244-U, ¶¶ 54-55.

¶ 12    On July 19, 2023, the defendant filed a *pro se* petition for postconviction relief, raising six claims. It alleged that appellate counsel was ineffective for failing to raise that (1) the trial court erred when it (a) admitted hearsay testimony pertaining to a police investigation, and (b) did not consider Grady's victim impact statement and (2) trial counsel was ineffective for failing to (a) impeach witnesses Jose Perez and Tenille Perring, including failing to investigate, interview, and subpoena witness Torrie Frahm to contradict Jose Perez's testimony, and (b) apprise the defendant

4

of a favorable plea offer. Attached to the *pro se* postconviction petition were exhibits that included transcript testimony from the jury trial, a letter signed by Grady stating that the defendant did not shoot him, and a notarized affidavit by the defendant attesting that he read and understood the *pro se* postconviction petition and all of the facts presented in the petition were true and correct.

¶ 13 On November 28, 2023, the postconviction petition advanced to the second stage because it was not ruled upon within 90 days of its filing. The public defender's office was appointed to represent the defendant.

¶ 14 On March 14, 2024, postconviction counsel filed a supplemental petition for postconviction relief. The supplemental petition incorporated the allegations contained in the defendant's original *pro se* petition. It added a claim that the defendant received ineffective assistance of counsel from trial counsel due to trial counsel's violation of the confrontation clause by eliciting "inadmissible hearsay statements from anonymous witnesses about the flight path of the shooter." It claimed that such actions amounted to deficient performance.

¶ 15 Moreover, the supplemental petition stated an affidavit from the defendant was attached to the supplemental petition to support his claim that, prior to the second trial, the State offered a guilty plea in exchange for a sentencing cap of 10 years. It further noted that trial counsel made an unauthorized counteroffer of four years' imprisonment. It stated, "Defendant would have accepted the ten year prison offer if trial counsel had informed him of it." The defendant's affidavit stated that before jury selection for his second trial, when questioned by the court, the prosecutor indicated that the State made a plea offer and trial counsel made a counteroffer. It further stated that the defendant "was never aware of any plea negotiations." The affidavit averred that when he questioned trial counsel about the plea negotiations that had occurred, trial counsel informed him, "[T]he State offered 10 years but I knew you wasn't going to take it."

5

¶ 16    Also on March 14, 2024, postconviction counsel filed an Illinois Supreme Court Rule 651(c) certificate. It certified that counsel had (1) "consulted with the petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights"; (2) "examined the record of the proceedings at the trial"; and (3) "made any amendments to the petitions filed *pro se* that [were] necessary for an adequate presentation of petitioner's contentions."

¶ 17    On June 11, 2024, the State filed a motion to strike and/or clarify the postconviction petition. It objected to postconviction counsel incorporating all the allegations in the *pro se* petition, noting that it is well-settled that such hybrid representation, *i.e.*, the defendant is represented but filed *pro se* pleadings, is prohibited. The State contended that proceeding in this manner was prejudicial as the State may misconstrue or overlook one of several *pro se* allegations. It argued that fundamental fairness required that the nonmovant party be adequately apprised of the claims and issues to provide an appropriate response. The State requested the circuit court strike the *pro se* postconviction petition and/or permit postconviction counsel a reasonable time to file an amended petition that set forth each of the defendant's claims with clarity and specificity.

¶ 18    On June 17, 2024, the circuit court held a status hearing. Postconviction counsel was present, but the defendant was not. The State contended that the defendant's *pro se* petition listed six claims but contained allegations within those claims that could be considered additional, separate subclaims. It further noted that the margins of the *pro se* petition were cut off on the left, so it was unsure what was labeled as a separate claim. After the circuit court inquired, postconviction counsel indicated that he believed the defendant's *pro se* allegations had merit. The court asked if postconviction counsel believed anything needed corrected or added. Postconviction counsel stated that the defendant wanted the court to rule on his *pro se* petition and that he would

6

not be making any further amendment. The State asked for clarification on the claim that appellate counsel was ineffective for not raising the trial court's error in disregarding the victim impact statement. It specifically asked, "whether [the defendant is] saying that appellate counsel was ineffective for not asserting that the court erred or that appellate counsel was ineffective for not subpoenaing Grady or both ***." The circuit court asked postconviction counsel for clarification. Postconviction counsel stated,

> "I don't know. I just would say—and it's hard for me. I just think that specific issue—I just think it can easily be addressed by the State. I don't mean that—I'm not trying to say fighting words here, but I just—I don't know how much clarification is needed. I mean, just I guess assume the most expansive—expansive thing, and—and I think the State can fashion a proper response."

The circuit court stated it assumed the *pro se* petition made both arguments and instructed the State to assume it is both.

¶ 19    On July 19, 2024, the State filed a motion to dismiss the *pro se* postconviction petition as well as the supplemental postconviction petition. It argued the defendant failed to establish ineffective assistance of counsel and that many claims were barred by *res judicata* or waiver.

¶ 20    On August 7, 2024, the circuit court issued its written order for the second-stage proceedings on the defendant's postconviction petition. In it, the circuit court dismissed all allegations for failure to show deficient representation and/or prejudice, except for the claims in the supplemental petition that trial counsel was ineffective for failing to tell the defendant about the 10-year plea offer, making an unauthorized 4-year counteroffer, and the claim in the *pro se* petition that appellate counsel was ineffective for failing to raise the same issue on appeal. The *pro se* petition and supplemental petition then advanced to the third stage on these claims.

7

¶ 21　On October 4, 2024, the third-stage hearing commenced. The defense's first witness was Kristin Alferink. Alferink testified that she was previously the lead prosecutor assigned to this case and tried the case twice before a jury. After the first trial, but before the second trial, on September 14, 2020, she sent an email to the defendant's attorney, Cierra Norris, offering a plea agreement in which the State would agree to a cap of 10 years' imprisonment in exchange for the defendant's guilty plea to the charge of aggravated discharge of a firearm. Alferink identified the email as the defendant's exhibit No. 1. The email was in response to Norris's previous offer that the defendant would plead guilty for a four-year sentence.

¶ 22　On cross-examination, Alferink clarified that the offer made by Norris was in response to the State's previous offer made prior to the first trial. She agreed that in her email to Norris, she stated "I do not think he will take that." When questioned why she made that statement, Alferink stated that she did not believe the defendant would take the offer of a 10-year cap. She stated that she had listened to numerous jail phone calls the defendant made to one of his girlfriends both before and after the first trial. In these calls, the defendant was convinced that he was going to beat the case because the State's case against him was "bogus" and the State could not prevail without the testimony of the victim, Robert Grady. The defendant knew the State had been unable to secure Grady for the first trial. Alferink believed that the only offer the defendant may have taken would have been one for time served.

¶ 23　The defendant testified that Norris never told him about any offers made by the State between the first trial and the second trial. When, on the first day of his second jury trial, the court asked the parties if there were any plea negotiations and Alferink stated that the defense had made a four-year counteroffer, he asked Norris "so you made a counteroffer?" He then asked Norris what the State's offer was, and she informed him that it was for a prison term of 10 years. She did

8

not tell him that it was for a sentencing cap of 10 years. Norris then told him that she rejected the offer because she knew he would not take it. This exchange surprised him because they "never even had a discussion of time, period." He did not "even know it was a ten-year plea at all." The defendant did not tell the court that he was never informed of the offer because he was "aggravated" and "didn't know what to do." However, had he been informed of the offer for a cap of 10 years, he would have accepted it because he otherwise was facing a possible term of 30 years' imprisonment.

¶ 24    The defendant further testified that although he believed at his first jury trial that he would be found not guilty of the charges, he was not confident that the outcome of the second trial would end the same way. He stated that he was nervous and "it was something telling me I wasn't gonna beat it the second time."

¶ 25    On cross-examination, the defendant testified that although he was not willing to negotiate a plea agreement before his first trial, he was willing to do so for the second trial. However, he was not told of any plea offers and he and his attorney did not have any of "those type of discussions." The defendant acknowledged that he knew he could have pled guilty rather than go to trial, but he did not believe there was any offer to consider.

¶ 26    Cierra Norris then testified on behalf of the State. She stated that she currently practiced law in the areas of "criminal defense, civil rights, and personal injury." She represented the defendant in both of his jury trials in this case. Between the first and second trials, she and Alferink engaged in plea negotiations. Alferink's offer before the first trial was 17 years' imprisonment, to be served at 85%. Before the second trial, Norris offered the defendant's guilty plea in exchange for a term of four years' imprisonment. She did not consult with the defendant before extending this offer. Alferink rejected the offer and then offered a sentencing cap of 10 years' imprisonment

9

for an open plea to the charge of aggravated discharge of a firearm. Norris relayed the 10-year offer to the defendant in person at the jail. However, she did not recall if she specifically told him that the offer was for a 10-year cap.

¶ 27 Norris further testified that the defendant had "absolutely" no interest in the offer. He also did not discuss further negotiations or offers with her. She stated that the defendant "was aware of his ability to talk to me about everything." He "was adamant about going to trial." Norris agreed that defendant expressed to her that he intended to go straight to trial as quickly as possible and never indicated to her that he would have agreed to the 10-year offer.

¶ 28 On cross-examination, Norris testified that she and the defendant never talked about, and the defendant never authorized, the four-year offer she made to Alferink prior to her making it. He did not tell her to make the offer.

¶ 29 The State then requested that the circuit court take judicial notice of the transcripts from prior court proceedings, particularly of the *Krankel* inquiry held on December 30, 2020. The circuit court granted the request. After argument of the State and defense counsel, the circuit court took the matter under advisement.

¶ 30 On October 9, 2024, the circuit court issued its written order denying the defendant's postconviction petition. It found "Ms. Alferink generally credible." It further found that "Ms. Norris was also generally credible." It noted, "the testimony of Alferink and Norris are relatively consistent and contradict Defendant." The circuit court first determined, "Here, Ms. Norris did not correctly tell Defendant the State's offer. She should have done so and her actions fell below the level of a reasonable attorney." It further determined that (1) the defendant "was aware of the minimum and maximum sentences"; (2) the defendant "was aware of the ramifications of accepting or rejecting a plea offer"; (3) "there is no reasonable probability, absent trial counsel's

10

deficient advice, the defendant would have accepted any plea, whether 10 years or open with a cap of 10 years"; and (4) the defendant's "evidence is based solely on his own subjective, self-serving testimony and not based upon independent, objective confirmation that his rejection of any plea was based on counsel's deficient advice as opposed to other considerations." It stated the case was one "of buyer's remorse" and ultimately found that the defendant did not "establish that Ms. Norris' failure to explain the correct offer prejudiced him." It further found that no facts were presented at the hearing concerning appellate counsel's performance and it was "not ineffective of appellate counsel to not raise the plea negotiation issue when this Court finds that there is no merit to it." It thus found appellate counsel not to be ineffective. The defendant now appeals.

¶ 31                                                    II. ANALYSIS

¶ 32     The defendant challenges both the circuit court's third-stage postconviction determination and postconviction counsel's compliance with Rule 651(c). The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)) provides a three-stage process wherein defendants may collaterally challenge their convictions and/or sentences for substantial violations of their federal or state constitutional rights. *People v. Whitfield*, 217 Ill. 2d 177, 183 (2005). At the first stage, the circuit court must review the defendant's petition within 90 days of its filing and will dismiss a petition only if it is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2022); *People v. Hodges*, 234 Ill. 2d 1, 9-11 (2009). If the petition is not dismissed, the petition advances to second-stage proceedings at which time the court may appoint counsel for an indigent defendant. *People v. Cotto*, 2016 IL 119006, ¶¶ 26-27. Appointed counsel may then amend the postconviction petition, and the State may file a motion to dismiss. *Id.* ¶ 27. If the court finds that the petition and any accompanying documents make a substantial showing of a constitutional violation, it will advance the petition to a third-stage evidentiary hearing. *Id.* ¶ 28.

11

¶ 33                              A. Denial of Postconviction Petition

¶ 34    At the third stage, the circuit court must determine whether the evidence presented demonstrates that the defendant is, in fact, entitled to relief. *People v. Domagala*, 2013 IL 113688, ¶ 34. The defendant bears the burden of making a substantial showing of a constitutional violation at this stage. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). Such a showing must be made by a preponderance of the evidence. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). "At such a hearing, the circuit court serves as the fact finder, and, therefore, it is the court's function to determine witness credibility, decide the weight to be given testimony and evidence, and resolve any evidentiary conflicts." *Domagala*, 2013 IL 113688, ¶ 34. A circuit court's determination will not be reversed unless it is manifestly erroneous. *People v. English*, 2013 IL 112890, ¶ 23. A judgment is manifestly erroneous only if it is "arbitrary, unreasonable, or not based on the evidence." *People v. Wells*, 182 Ill. 2d 471, 481 (1998).

¶ 35    The defendant argues that the circuit court erred when it denied his postconviction petition at the third stage. He avers that he demonstrated, by a preponderance of the evidence, that he was denied his constitutional right to the effective assistance of counsel during plea negotiations. We disagree.

¶ 36    A criminal defendant has the right to effective assistance of counsel that is guaranteed by both the United States and Illinois Constitutions. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *People v. Albanese*, 104 Ill. 2d 504, 525-26 (1984). This right also applies to the plea bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012); see also *Missouri v. Frye*, 566 U.S. 134, 145-46 (2012). The defendant has the right to effective assistance of counsel both during negotiations with the State and when

12

counsel advises the defendant whether to accept or reject an offer. *People v. Hale*, 2013 IL 113140, ¶ 16.

¶ 37 "[C]laims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*." *Frye*, 566 U.S. at 140. *Strickland* established that counsel renders ineffective assistance where counsel's performance falls below an objective standard of reasonableness, and there is a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 687. The failure to establish either deficient performance or prejudice precludes a finding of ineffective assistance of counsel. *People v. Cherry*, 2016 IL 118728, ¶ 31.

¶ 38 The defendant argues that he was prejudiced because he would have accepted the offer of a prison sentence with a cap of 10 years and thus, would not have been subject to the possibility of a sentence of 30 years' incarceration. The State counters that the defendant did not establish prejudice because, by his own words at the *Krankel* inquiry, he had no interest in a plea agreement.

¶ 39 To establish prejudice, "the defendant must establish that there is a reasonable probability that, absent his attorney's deficient advice, he would have accepted the plea offer." *Hale*, 2013 IL 113140, ¶ 18. " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id.* (quoting *Strickland*, 466 U.S. at 694).

¶ 40 Here, the circuit court's finding that the defendant failed to establish the required prejudice was not manifestly erroneous. The testimonies of Alferink and Norris corroborated with one another. Alferink indicated that she did not believe the defendant would accept any plea agreement offer made by the State other than, possibly, an offer for time served. She based this belief on jail calls between the defendant and his girlfriend, wherein the defendant was firm that he would not plead guilty because he would again beat the charges as he had done in his first trial. Moreover,

13

Ms. Norris indicated that the defendant showed no interest in the 10-year offer she relayed to him and was adamant about proceeding to trial as quickly as possible. Because of his push to proceed to trial so quickly, she believed he would not have accepted any plea agreement offer extended by the State.

¶ 41    The defendant's *Krankel* inquiry testimony also belies his claim that he would have accepted the 10-year cap offer. During that inquiry, the defendant was unequivocal that he would not have accepted any plea agreement offer when he stated, "I wasn't pleading to anything, so I don't understand how a plea deal was even negotiated or even talked about because I didn't ask or even look into a plea deal."

¶ 42    The only evidence to the contrary was defendant's statement at the third-stage hearing that claimed he would have accepted a 10-year cap offer. His testimony squarely contradicted the other witnesses' testimonies as well as the defendant's earlier testimony at the *Krankel* inquiry. In reviewing this record, the circuit court's determination that the defendant failed to show prejudice was not arbitrary or unreasonable and was based on the evidence. Therefore, the circuit court's decision was not manifestly erroneous. Because the defendant has failed to establish prejudice, we need not address counsel's representation. *People v. Evans*, 186 Ill. 2d 83, 94 (1999).

¶ 43              B. Compliance with Illinois Supreme Court Rule 651(c)

¶ 44    Alternatively, the defendant argues that postconviction counsel failed to comply with Illinois Supreme Court Rule 651(c). The right to counsel in a postconviction proceeding is statutory, not constitutional. *People v. Pinkonsly*, 207 Ill. 2d 555, 567 (2003). A postconviction defendant is therefore only entitled to a reasonable level of assistance as provided by the Act. *People v. Turner*, 187 Ill. 2d 406, 410 (1999).

¶ 45    Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) outlines the steps postconviction counsel must take to provide reasonable assistance. Specifically, Rule 651(c) requires postconviction counsel to (1) consult with petitioner to ascertain his or her contentions of deprivation of constitutional rights, (2) examine the record of the proceedings at the trial, and (3) make any amendments to the *pro se* petition that are necessary for an adequate presentation of petitioner's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

¶ 46    Where, as here, counsel files a Rule 651(c) certificate, there is a presumption that the defendant received the representation that the rule requires. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19. If the record shows counsel failed to meet one of Rule 651(c)'s requirements, the presumption is rebutted and there is no compliance with Rule 651(c). See *People v. Johnson*, 154 Ill. 2d 227, 248-50 (1993). Failure to comply with Rule 651(c) requires reversal regardless of whether the petition's claims are meritless. *People v. Addison*, 2023 IL 127119, ¶ 33. We review whether postconviction counsel substantially complied with Rule 651(c) *de novo*. *People v. Frey*, 2024 IL 128644, ¶ 21.

¶ 47    The defendant contends postconviction counsel failed to amend the petition to adequately present his contentions where counsel did not attach supporting documentation for several claims in his *pro se* petition. He further asserts counsel neglected to make necessary amendments to avoid the procedural default of his claim that trial counsel was ineffective for eliciting inadmissible hearsay statements. He argues postconviction counsel also failed to allege the necessary prejudice for the claim. Additionally, the defendant argues that postconviction counsel failed to properly frame the claim that proceeded to the evidentiary hearing, as well as his claim that appellate counsel was ineffective for failing to raise the trial court's error in disregarding Grady's statement. With respect to the latter, the defendant notes that postconviction counsel could not explain this

15

claim when the State expressed confusion and the court asked for clarification. Regarding the former, he explains that postconviction counsel raised the claim that trial counsel did not inform the defendant of the State's offer of 10 years' imprisonment, but his claim was that counsel did not inform him of the State's offer of *a sentencing cap* of 10 years. We do not address all the defendant's contentions, as this appeal is easily resolved by addressing postconviction counsel's failure to make necessary amendments to allege all elements of an ineffective assistance of trial counsel claim.

¶ 48    Postconviction counsel need not file an amended petition in every case. *People v. Wallace*, 2018 IL App (5th) 140385, ¶ 30. However, postconviction counsel must make amendments that "are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017). To adequately present a claim of ineffective assistance of counsel, the petition must allege counsel's performance fell below an objective standard of reasonableness and counsel's errors resulted in prejudice. *People v. Bailey*, 2020 IL App (5th) 160458, ¶ 86. To establish prejudice, "defendant must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v. Valdez*, 2016 IL 119860, ¶ 29 (quoting *Strickland*, 466 U.S. at 694). The failure to establish either prong precludes a finding of ineffectiveness. *People v. Easley*, 192 Ill. 2d 307, 318 (2000).

¶ 49    In the seminal case, *People v. Turner*, 187 Ill. 2d 406, 413 (1999), the Illinois Supreme Court established that the failure to plead prejudice in a postconviction petition rebuts the presumption that postconviction counsel made all necessary amendments to adequately present an ineffective assistance of counsel claim under *Strickland*, 466 U.S. 668. See also *People v. Dixon*, 2018 IL App (3d) 150630, ¶¶ 16, 20; *People v. Jennings*, 345 Ill. App. 3d 265, 273-74 (2003); *People v. McDonald*, 2018 IL App (3d) 150507, ¶¶ 29-31. Here, in the supplemental petition,

16

postconviction counsel asserted that trial counsel provided deficient performance for eliciting inadmissible hearsay that violated the confrontation clause, where such decision was not trial strategy and only served to bolster the State's case. However, postconviction counsel in no way indicated there was a reasonable probability that, but for trial counsel's actions, the results of the proceedings would have been different. Because prejudice is an essential element of an ineffective assistance of counsel claim, postconviction counsel failed to shape the defendant's ineffective assistance of counsel claims into proper legal form. *Turner*, 187 Ill. 2d at 413; *Dixon*, 2018 IL App (3d) 150630, ¶¶ 16, 20; *Jennings*, 345 Ill. App. 3d at 273-74; *McDonald*, 2018 IL App (3d) 150507, ¶¶ 29-31. Postconviction counsel thus failed to comply with Rule 651(c).

¶ 50　　The State does not contend that postconviction counsel made all the necessary amendments; rather, the State argues that postconviction counsel adequately expressed the defendant's contentions and the court dismissed the claims on the merits. It further argues that all of the defendant's claims are meritless and postconviction counsel could not have supplemented, added, or shaped his claims to make them meritorious.

¶ 51　　If there was no meritorious claim of prejudice based on the facts of this case—as the State argues—an ineffective assistance of trial counsel claim "would have been meritless, and the appropriate action was to remove the claim from the petition." *People v. Williams*, 2023 IL App (5th) 210322-U, ¶ 53 (citing *Dixon*, 2018 IL App (3d) 150630, ¶ 22). "Because counsel here included the claim in the petition, we presume he believed the claim potentially had merit and therefore was required to adequately assert said claim." *Id.* (citing *Dixon*, 2018 IL App(3d) 150630, ¶ 22; *People v. Brown*, 2022 IL App (5th) 180507-U, ¶ 48). Nevertheless, postconviction counsel here failed to do so.

17

¶ 52 Prejudice is not required for remand when counsel fails to shape a claim in the proper legal form. *Addison*, 2023 IL 127119, ¶¶ 33, 37. Our supreme court has repeatedly clarified that noncompliance with Rule 651(c) requires remand "without a consideration of whether the petition's claims have merit." *Id.* ¶¶ 33, 37, 42. "[I]t would not be appropriate to affirm the dismissal of the petition when counsel had not shaped the claims into the proper form." *Id.* ¶ 41. Postconviction counsel's noncompliance with Rule 651(c) therefore requires reversal.

¶ 53 Since we have already found the presumption of compliance has been rebutted and reversal is required, we need not determine whether the defendant's remaining allegations also rebut the presumption of compliance with Rule 651(c). However, we note that Rule 651(c) requires counsel to ascertain defendant's contentions, then make the necessary amendments to those contentions to shape them in proper legal form (Ill. S. Ct. R. 651(c) (eff. July 1, 2017)), including an attempt to overcome procedural bars and an ethical obligation to omit any frivolous claims. See *Addison*, 2023 IL 127119, ¶ 21; *People v. Greer*, 212 Ill. 2d 192, 205-10 (2004).

¶ 54 We therefore find postconviction counsel failed to comply with Rule 651(c), reverse, and remand for the appointment of new postconviction counsel. On remand, prior to the circuit court addressing the merits of the petition, new postconviction counsel should comply with Rule 651(c) and amend the petition as necessary, including any attempts to overcome procedural bars and omit any patently nonmeritorious claims.

¶ 55                                       II. CONCLUSION

¶ 56 The circuit court's third-stage denial of the postconviction petitions was not against the manifest weight of the evidence, but postconviction counsel failed to shape the defendant's claims into proper legal form in violation of Rule 651(c). Accordingly, we reverse and remand for

18

appointment of new postconviction counsel who should comply with Rule 651(c) prior to the court addressing the merits of the petition.

¶ 57    Reversed and remanded.